**WORLD GYM LICENSING, LTD., Plaintiff,**

v.

**FITNESS WORLD, INC., et al., Defendants.**

**No. Civ. PJM 97–3558.**

United States District Court, D. Maryland.

April 26, 1999.

---

Joseph D. Lewis, Barnes & Thornburg, Washington, D.C., Jill T. Powlick, Indianapolis, IN, for plaintiffs.

James Aloysius Powers, Barry P. Miller, Schulman, Rogers, Gandal, Pordy & Ecker, Rockville, MD, for defendants.

## OPINION

MESSITTE, District Judge.

### I.

This is an action for permanent injunctive relief and damages for alleged infringement of federally registered service marks and trademarks under 15 U.S.C. § 1114(1) (Count I); false designation of origin and false description under 15 U.S.C. § 1125(a) (Count II); trade disparagement under 15 U.S.C. § 1125(a)(1)(B) (Count III); service mark and trademark dilution under 15 U.S.C. § 1125(c) (Count IV); common law service mark and trademark infringement (Count V); common law unfair competition (Count VI); and common law trade disparagement (Count VII).

Defendants have asserted a counterclaim seeking cancellation of Plaintiff's trade and service marks pursuant to 15 U.S.C. § 1119.

Plaintiff World Gym Licensing, Ltd. (World Gym), a California corporation, is engaged in the business of promoting and licensing gymnasiums and fitness centers throughout the world, principally in the United States. It also licenses merchandise bearing its name and logo, particularly gym clothing.

Fitness World, Inc. (Fitness World), the lead Defendant, operates 6 fitness centers in Montgomery County, Maryland, either directly or through several corporate affiliates, also Defendants in this case.[1] Individual Defendants Peter B. Harvey, Marc Luger, Don Abramson, Rich Force, James Crone, and Steve Morningstar at all relevant times have held management positions with one or more of the Corporate Defendants.

The Court, sitting without a jury, held a trial on the merits over the course of 3½ days. Having weighed the evidence, the Court finds in favor of Plaintiff on Counts I and V, respectively federal statutory service mark and trademark infringement and common law service mark and trademark infringement. It finds in favor of Defendants on Counts II, III, IV, VI and VII, respectively false designation of origin and false description, trade disparagement under federal law, dilution under the Federal Dilution Act, common law unfair competition, and common law trade disparagement.

Because the Court finds Plaintiff guilty of laches, it awards no monetary damages to Plaintiff. However, each corporate and individual Defendant will be permanently enjoined from using the service marks Fitness World and the design of the globe or any trademark similar to Plaintiff's trademarks.

No attorneys' fees will be awarded to Plaintiff.

Defendants' counterclaim seeking cancellation of Plaintiff's registration of the trademark WORLD will be denied.

### II.

World Gym engages in the business of providing health and fitness services and goods under various licensed trademarks and service marks incorporating the word WORLD.

1. The other Corporate Defendants are: Fitness World of Olney, Inc., Fitness World of Germantown, Inc., JRCC Health, Inc., Harvey Health, Inc., Fitness World of Rockville, LLC. Defendants have opened two additional facilities in Frederick County since this litigation was initiated, neither of which has been joined as defendants. These are Frederick Health, LLC and Fitness World Golden Mile, LLC.

The first World Gym facility opened in Santa Monica, California, in 1977. The company was founded by Joe Gold, a well-recognized figure in the fitness industry and founder of the Gold's Gym chain. An early protégé of Gold, Arnold Schwarzenegger, originally known as a body builder and now a widely recognized screen actor and one-time Chairman of the President's Council on Physical Fitness, has been part of the World Gym organization from the outset.

Beginning in 1981, World Gym granted licenses for the opening of facilities in Ohio, Connecticut, and Northern California. Currently, according to statistics in Club Business International Magazine, World Gym ranks third in the world with regard to the number of fitness clubs it owns or franchises (1 owned/281 franchised) and sixth in the world in number of members (502,000). Its clubs and members are spread throughout the world.

World Gym caters to a diverse clientele, ranging from "hard core" body builders and athletes to average individuals simply wishing to achieve fitness. Approximately half of its members are women. Among the options offered at Plaintiff's licensed facilities are weight training equipment, cardiovascular equipment, child care, a juice bar, and a fully stocked pro shop. Some World Gym licensed facilities include courts for playing games.

World Gym publishes a quarterly publication known as "World Gym Insider," which contains information of interest to its licensees. Among other things, the magazine recognizes outstanding licensees and their achievements and promotes and advertises seminars and equipment expositions, as well as business and operations manuals.

Radio and television advertising are frequently used to promote Plaintiff's trademarks.

A number of motion picture and television celebrities frequent World Gym facilities, which, according to World Gym's health and fitness club expert, gives a special cachet to the club name. Arnold Schwarzenegger wore a World Gym shirt in the motion picture "Running Man" for large segments of the film. Kevin Levrone, described as one of the best body builders in the world, holds a World Gym franchise in Severna Park, Maryland.

A number of national magazines have either carried pictures of World Gym facilities or apparel or have run articles in which World Gym franchisees have been asked to comment on various fitness issues.

### III.

World Gym owns the following trademark registrations for its marks, all of which incorporate the word "WORLD."

1) U.S. service mark Reg. No. 1,911,887 for the mark "WORLD." This registration covers fitness center services, conducting seminars on fitness and providing personal instructions on exercise and physical fitness by manner of individualized courses, gymnasium services, conducting bodybuilding exhibitions and contests. This registration is valid and subsisting. The mark was registered by the U.S. Patent and Trademark office as a non-descriptive mark.

2) U.S. trademark and service mark Reg. No. 1,791,584 of the mark "WORLD GYM." The descriptive word "GYM" is disclaimed in this registration. This registration covers various printed publications, as well as gymnasium services. This registration is valid and subsisting. The mark was registered by the U.S. Patent and Trademark office as a non-descriptive mark.

3) U.S. service mark Reg. No. 1,783,000 for the mark "WORLD GYM" and design. This registration covers gymnasium services and is valid and subsisting. The mark was registered by the U.S. Patent and Trademark office as a non-descriptive mark. The word "GYM" was disclaimed in this registration.

4) U.S. trademark Reg. No. 1,354,193 for the mark "WORLD GYM" and design. This registration covers gym clothing and is valid and subsisting. The mark was registered by the U.S. Patent and Trademark office as a non-descriptive mark. The word "GYM" was disclaimed in this registration.

5) U.S. service mark Reg. No. 1,856,427 for the mark "WORLD GYM FITNESS CENTERS" and design. This registration covers fitness center services, conducting exercise classes, conducting seminars on nutrition and fitness and providing personal instructions on nutrition, exercise and physical fitness. This registration is valid and subsisting. The mark was registered by the U.S. Patent and Trademark office as a non-descriptive mark. The words "GYM FITNESS CENTERS" were disclaimed in this registration.

6) U.S. trademark Reg. No. 1,739,940 for the mark "WORLD GYM LEATHER FORCE" and design. This registration covers leather jackets, leather hats and leather and denim jackets. This registration is valid and subsisting.

World Gym has used its trademarks continuously for more than 20 years.

It utilizes different marks in various forms. The marks used include "WORLD," "WORLD GYM," "WORLD GYM FITNESS CENTERS," and other similar designations. Some licensees have used the mark "WORLD GYM FITNESS CENTERS." Another variation used by certain of Plaintiff's licensees is "WORLD AEROBIC AND FITNESS CENTER." World Gym marks typically incorporate or are displayed along with a pictorial representation of a globe.

Many facilities licensed by World Gym use a form of the trademark in which the word "WORLD" is substantially larger in size than the word "gym."

In addition, many promotional materials produced by World Gym or used by its franchisees feature the word "WORLD" and play off World Gym's marks. These include such slogans as "Fitness for the Real World" and "Ready to Take on the World?"

Besides providing services pursuant to its licensing marks, World Gym has been engaged in substantial merchandising of products under these marks. These products include several lines of apparel, gloves, wrist wraps, tote bags and the like. Typically these products display the mark World Gym Fitness Centers and the design of a globe. World Gym's merchandise is marketed not only at its licensees' facilities, but also through such nationwide retail stores as K–Mart. Plaintiff's trademarks have been used under a license on various nutritional supplements and vitamin products.

Despite the differences in appearance that characterize the use of World Gym's trademarks by its licensed clubs, the consistent tie-in is the word "WORLD."

### IV.

Over the years, particularly in cases when one of its franchisees has been directly affected, World Gym has undertaken trademark enforcement actions. Typically a letter has been sent by World Gym's central office in Santa Monica to the supposed infringer asking that it cease and desist from use of the infringing mark. In most cases the matter has been resolved by agreement. In a few cases, World Gym has brought legal actions to obtain enforcement, including actions in Arizona, Missouri, New York and in the U.S. Patent and Trademark Office before the Trademark Trial and Appeal Board.

### V.

In 1991, Defendant Peter Harvey opened a health and fitness facility in Silver Spring, Maryland, adopting the name "Fitness World." In the same year, he obtained a trademark for the name "Fitness World," and one for a logo consisting of the name and a globe design. As it happened, this facility was in direct compe-

tition with a World Gym franchisee located in Wheaton, Maryland, about 3 miles from Silver Spring. No complaint of trademark infringement or unfair competition, however, was ever raised on behalf of the World Gym–Wheaton facility, either locally or out of Santa Monica. No complaints of consumer confusion appear to have occurred. The World Gym–Wheaton operation folded within a few years.

By 1993, the situation had changed. World Gym had placed another franchisee in Germantown, Maryland, some 14 miles from Silver Spring. This time the owner of the franchise, Steven Jones, became concerned over the existence of the Fitness World operation which, at or about that time, opened a new facility in Gaithersburg, roughly 5 miles from Germantown. Jones complained to Mike Uretz, World Gym's Executive Director in Santa Monica. In late 1993, Uretz sent a letter to Fitness World's Harvey in Maryland, indicating that World Gym objected to Harvey's use of the term "Fitness World Gym." The letter, one-page long, stated simply that World Gym owned the "World Gym" name, trademark, and service mark and that "Fitness World Gym" should cease and desist from using that name. Uretz cited no instances of consumer confusion. The letter closed with the warning that this was "the only communication you will receive from me and if you continue violating our trademark we will take action against you." Harvey, through counsel, promptly sent back a letter to Uretz rejecting the demand and there, until early 1997, the matter rested.

By October 1996, Fitness World was ready to open yet another facility, this time in Germantown, its first to enter into direct competition with World Gym's franchisee in Germantown.

World Gym's Germantown franchisee again took the matter up with headquarters in Santa Monica. Soon after, World Gym–Santa Monica, through local counsel, took up the cudgel. After efforts on World Gym's part to have Defendants voluntarily change the name of their gyms failed, this suit followed.

## VI.

The gist of Plaintiff's action is that Defendants, with prior knowledge of Plaintiff's trademarks, have used the confusingly similar designation "Fitness World," as well as the phrase "Fitness World" along with a globe design, to promote its gym and fitness center services as well as to market its merchandise in direct competition with the services and merchandise offered under Plaintiff's "WORLD" trademarks.

Defendants' first-line defense is that Plaintiff is barred from going forward with this action by reason of the equitable doctrine of laches.[2] They next defend on the grounds that there is no "genuine issue of confusion" with respect to the use by Fitness World of its name and globe logo in the fitness club market.

## VII.

Laches is available as a defense against claims for damages in trademark infringement actions. *See Brittingham v. Jenkins,* 914 F.2d 447 (4th Cir.1990). Although each case is to be judged on its own particulars, the following factors must be considered:

---

**2.** While Defendants assert the defenses of laches, waiver and estoppel, the sum of what they are arguing is that Plaintiff knew of a potential infringement, unreasonably delayed in bringing this enforcement action, and now does so to the prejudice of Defendants. This is essentially the definition of laches. *See* 5 J. McCarthy, *McCarthy on Trademarks and Unfair Competition,* § 31:2 (4th ed.1996) (herein-

after cited as *"McCarthy"*). "Estoppel by laches" is the same doctrine with a slightly different emphasis. It stresses that, by reason of the delay and prejudice, a plaintiff will be estopped to pursue its claim. *Id.* "Waiver" refers to a formal renunciation of a right to sue, which is nowhere evident in the present case. *See, e.g., Saverslak v. Davis–Cleaver Produce Co.,* 606 F.2d 208 (7th Cir.1979).

1) Whether the owner of the mark knew of the infringing use;

2) Whether the owner's delay in challenging the infringement of the mark was inexcusable or unreasonable; and

3) Whether the infringing user would be unduly prejudiced by the owner's delay. *Id.*, 914 F.2d at 456.

■ If these factors are satisfied, laches normally bars the trademark owner's claim for monetary damages against an infringer. *Id.* On the other hand, laches may not be invoked to deny injunctive relief if it remains true that the infringing use is likely to cause confusion. *See Sara Lee Corp. v. Kayser–Roth Corp.*, 81 F.3d 455, 461 (4th Cir.1996). Indeed, the defense of laches is one of "relative unavailability" to preclude injunctive relief. *Id.* at 462.

The basic facts in this regard are essentially undisputed. Plaintiff's franchisee in Wheaton knew of the existence of Fitness World in Silver Spring as of 1991. Although it is not clear whether Plaintiff's franchisee communicated that fact to headquarters in Santa Monica, it is certain that by 1993 World Gym knew of Fitness World's existence in both Silver Spring and Gaithersburg. Yet, as indicated, World Gym's only action at that juncture was to send a brief letter to Fitness World—with no back-up materials of any kind enclosed—demanding that Fitness World give up its name. Fitness World promptly said no and so the matter rested. World Gym then waited more than 3 years, *i.e.* until early 1997, before again demanding that Fitness World cease and desist from using its name and logo. By that time, at some cost, Fitness World had begun to expand its operations, opening a new facility in Germantown close by that of World Gym's Germantown franchisee.

■ Laches is not tied to the usual statute of limitations for business torts, although that is a factor that, among others, may be considered, *Finance Co. of Am. v. Bankamerica Corp.*, 502 F.Supp. 593, 595 (D.Md.1980), note. A time delay of as little as 3 years has been held sufficient to bar monetary relief in trademark infringement cases. *See, e.g., Golden West Brewing Co. v. Milonas & Sons, Inc.*, 104 F.2d 880 (9th Cir.1939). On the other hand, delays of as much as 8 years have been held insufficient to constitute a defense of laches as to either damages or injunctive relief. *See, e.g., San Francisco Ass'n for the Blind v. Indus. Aid for the Blind, Inc.*, 152 F.2d 532 (8th Cir.1946).

Inevitably, the crucial inquiry is why the mark owner has delayed.

■ Sometimes, as here, the plaintiff contends that it was engaged in litigation with others over the validity and infringement of the mark and was thus effectively unable to become involved. Plaintiff cites *Cuban Cigar Brands v. Upmann Int'l, Inc.*, 457 F.Supp. 1090, 1098, n. 28 (S.D.N.Y.1978), *aff'd without opinion*, 607 F.2d 995 (2d Cir.1979) to the effect that "a trademark owner is not bound to take on more than one infringer at a time." That explanation fails to persuade in the present case. Although Plaintiff was involved in certain other efforts to control possible infringement of its mark and name, these were essentially straightforward transactions involving letter demands that were quickly acceded to. They do not provide an excuse for World Gym's failure to follow up on the 1993 letter.

A more compelling justification for Plaintiff's delay would be that cited by McCarthy in *McCarthy on Trademarks and Unfair Competition:*

> "The senior user has no obligation to sue until 'the likelihood of confusion looms large' and certainly [1] one cannot be guilty of laches until his right ripens into one entitled to protection. For only then can his torpor be deemed inexcusable."

5 *McCarthy* § 31:19 at p. 31–43 (citing *Johanna Farms, Inc. v. Citrus Bowl, Inc.*, 468 F.Supp. 866 (E.D.N.Y.1978)).

As McCarthy relates, "while a slow steady increase in the level of business attributable only to the normal growth of any business may not always be sufficient to excuse a prior delay, any ... expansion into new ... territories should be sufficient to excuse a prior delay." *Id.* at pp. 31–43 to 31–44. Here, of course, Fitness World did not move into the Germantown area and into direct head-to-head competition with World Gym's franchisee until 1996.

On the other hand, there is also the matter of the harm that can result to a junior user as a result of the senior user's "torpor." It would be distinctly unfair for a trademark owner to permit a defendant to build up its business and profits and then at some time later file a suit demanding an accounting for those profits. *See* 5 *McCarthy* § 31:4, p. 31–17. Here, unquestionably, while World Gym dawdled, Fitness World was (so to speak) flexing its own muscles and expending sums of money to augment its operations.

All of this, in the Court's view, however, is largely academic. The fact is that until Plaintiff's franchisee in Germantown revived his complaint in late 1996, he was of the apparent view that any monetary damages sustained by reason of Fitness World's presence were "negligible."

On this record, therefore, whether by reason of Plaintiff's laches or the admitted absence of actual damages or both, the Court has determined to award no monetary damages to Plaintiff.

The issue of injunctive relief, however, remains.[3]

As the Court has observed, if it is apparent that the infringing use is likely to cause confusion, laches may not be invoked to deny injunctive relief. *Sara Lee Corp. v. Kayser–Roth Corp.*, 81 F.3d at 461.

**3.** One matter may be put to rest immediately. Plaintiff's laches in this case is in no way sufficiently aggravated to bar the request for injunctive relief. *See* 5 *McCarthy* § 31:7 and

## VIII.

■ To establish trademark infringement under the Federal Trademark Act, the owner of a valid trademark must establish that the defendant's use of a mark is "likely to cause confusion or to cause mistake or to deceive." 15 U.S.C. § 1114(1). "In applying this standard [the Fourth Circuit] has emphasized that a trademark owner need not demonstrate actual confusion." *Lone Star Steakhouse and Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 933 (4th Cir.1995).

■ *Lone Star* sets out the factors that the court is to consider in determining whether there is a likelihood of confusion:

a) The strength or distinctiveness of the marks;

b) The similarity of the marks;

c) The similarity of the goods and services the marks identify;

d) The similarity of the facilities the two parties use in their business;

e) The similarity of advertising used by the two parties;

f) Defendants' intent; and

g) Actual confusion.

43 F.3d at 923. *See also Sara Lee Corp. v. Kayser–Roth Corp.*, 81 F.3d 455 (4th Cir. 1996); *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir.1984); *Perini Corp. v. Perini Construction, Inc.*, 715 F.Supp. 719 (D.Md.1989), *rev'd on other grounds*, 915 F.2d 121 (4th Cir.1990). The Court considers these factors in the context of the present case.

■ a) *Strength of the trademark* — McCarthy says that "the true relative strength of a mark can only be fully determined by weighing two aspects of strength:

cases cited therein. Not only is the period of delay not "grossly long"; the likelihood of confusion, as will be discussed hereafter, is considerable. *Id.*

1) Conceptual strength: the placement of the mark on the spectrum of marks; and

2) Commercial strength: the market place recognition value of the mark." 2 *McCarthy* § 11:83, p. 11–142.

The spectrum of distinctiveness of marks refers to whether the mark in and of itself is inherently distinctive or noninherently distinctive. One subcategory of inherently distinctive marks are arbitrary marks, defined as those that comprise "words, symbols, pictures, etc. that are in common linguistic use but which, when used with the goods or services issue, neither suggest nor describe any ingredient, quality or characteristic of those goods or services." 2 *McCarthy* § 11:11, p. 11–15.

The word "WORLD" has no descriptive connotation in the fitness industry. The Patent and Trademark Office has so held and the Court is obliged to give "due regard to the determination of the Patent and Trademark Office, which necessarily decides whether a mark is descriptive or suggestive in its decision" to register a mark. *Lone Star*, 43 F.3d at 934. Defendants make no argument to the contrary. The Court concludes that the word "WORLD" is an arbitrary trademark.[4]

While it may not be accurate to say that an arbitrary mark is automatically a strong mark entitled to a broad degree of protection, *but see e.g. Stork Restaurant v. Sahati*, 166 F.2d 348 (9th Cir.1948), at least in their specific line of business, arbitrary marks may be entitled to broad protection. *Arrow Distilleries v. Globe Brewing Co.*, 117 F.2d 347 (4th Cir.1941). What

cannot be doubted in the present case, as will be discussed in greater detail presently, is that Plaintiff and Defendants offer virtually identical services and goods to an identical market. Plaintiff's marks have conceptual strength.

Plaintiff's marks also satisfy the second prong of the strength test posited by McCarthy—market place strength. In the fitness industry, "WORLD" bespeaks a particular organization with affiliates located in nearly every part of the globe, inspired by pioneers in the fitness field, world-class body builders, and marquee movie personalities. Its name and logo are featured in motion pictures, on television, radio and in magazines—not only those of the trade but those of more general readership. It counts more than a half million members. Strong even if not famous,[5] World Gym's marks enjoy a wide latitude of protection in the determination of whether there will be a likelihood of confusion. *See e.g. Kenner Parker Toys, Inc. v. Rose Art Industries, Inc.*, 963 F.2d 350 (Fed.Cir.1992).

b) *Similarity of marks* —The Fourth Circuit has indicated that in evaluating the similarity of two trademarks, "greater weight [should be] given to the dominant or salient portions of the marks." *Lone Star*, 43 F.3d at 936.

*Lone Star* is particularly instructive on this point. In *Lone Star*, the owner of the mark "Lone Star Cafe," who used it in connection with restaurant services and various clothing and promotional accessories bearing the restaurant's label, sued

---

**4.** Cf. *World Carpets, Inc. v. Dick Littrell's New World Carpets*, 438 F.2d 482, 486–88 (5th Cir.1971) (*Held*, mark WORLD as applied to carpet goods is validly registrable term) ("Nor can it be said that the term [WORLD] is used in a descriptive fashion, for it neither relates to the place of origin of the goods so marked, nor is it descriptive of the bounds within which the trademark owner functions."); *Cf. also Champion Spark Plug Co. v. Globe–Union Mfg. Co.*, 24 C.C.P.A. 1088, 88 F.2d 970, 972 (1937) (Held, application to register word "Globe" and figure of terrestrial glob denied

by reason of likely confusion with prior registered mark) (" 'Globe' ... identifies no particular geographical location, nor is its proper use as a trademark likely to interfere with or embarrass any public or private right." Same reasoning deemed applicable to figure of globe.)

**5.** "United States trademark law has never had a separate doctrine or category of 'famous marks.' " 4 *McCarthy* § 29:61, p. 29–112. *But see* Part IX of this Opinion.

operators of a restaurant called "Lone Star Grill." The dominant portion of the marks was the words "Lone Star." The Court held that "federal registration of 'Lone Star Cafe' effectively gave [Plaintiff] the exclusive right to use the term 'Lone Star' because the registration explicitly disclaimed the word 'Cafe' apart from the complete mark 'Lone Star Cafe.'" 43 F.3d at 926, n. 1.

In the present case the dominant portion of both parties' names is the word "world." As in *Lone Star*, the dominance of this word is shown by the fact that the generic word, here "gym," was disclaimed by Plaintiff in its trademark registrations. Further evidence of the dominance of the word "world" is shown by the fact that in certain instances, in both advertising and on merchandise, the word "gym" has been placed in a distinctly subordinate position relative to the word "world."

Both marks in this case combine the word "world" with a generic word for a health or fitness club, *e.g.* "gym." Both include the design of a globe.[6]

The marks, without question, are highly similar.

c) *Similarity of goods/services* —This factor is not open to dispute. The parties offer identical goods and services, *i.e.* health and fitness centers and gymnasium services to a similar range of clients. Both offer such additional services such as child care and aerobics. Both have pro shops and sell similar apparel.

d) *Similarity of facilities* —This factor is also indisputable. Architectural design and lay-out aside, both the World Gym and Fitness World facilities include reception areas, exercise areas, weight areas, exercise machine areas, and locker rooms as well as child care facilities.

e) *Similarity of advertising* —The advertising of the parties is much alike. Both entities advertise in local newspapers, sometimes in the same paper pages

apart, as well as by means of flyers. Both use direct mail advertising and television. The format of the ads is essentially the same, typically picturing attractive individuals standing near or working out on exercise equipment; both highlight by bullets or starbursts special features of their programs and special discounts. In virtually every instance, the word "world" and the globe are prominently placed.

■ f) *Defendants' intent* —Good faith is not a defense to trademark infringement. The reason for this is clear: If potential purchasers are confused, no amount of good faith can make them less so. Without more, however, bad faith may prove infringement. *Fuji Photo Film v. Shinohara Shoji Kabushiki Kaisha*, 754 F.2d 591 (5th Cir.1985).

The Court declines to find that either Defendants' initial adoption of the name "Fitness World" or their use of the name to date has been in bad faith. Even though a good argument might have been made at the outset that Defendants were infringing Plaintiff's marks, Plaintiff's failure to complain for an extended period gave Defendants cause to believe that they could continue to use the name and mark with impunity. Going back to 1991, when Fitness World and World Gym's franchisee were neighbors in the Wheaton–Silver Spring area, no complaints were raised. Following World Gym's baldly assertive cease-and-desist letter of 1993 and its immediate rejection by Fitness World's lawyer, the matter simply dropped off the screen for more than 3 years. During that time, Fitness World undertook to expand its operations. Until hearing from World Gym in early 1997, Fitness World could reasonably have understood that it would never be called to account by reason of its name and logo.

Even considering Defendants' intent as of the time the present suit was filed, it would not be fair to conclude that Defen-

---

**6.** As Plaintiff points out, some of its franchisees also use a form of Plaintiff's trademark that includes the word "fitness" or use the word "world" by itself.

dants acted in bad faith in further expanding their operations. At the very least, they had a colorable expectation that they might prevail on their laches defense, as indeed—at least to the extent of their not being held liable for monetary damages—they have. Where Defendants guessed wrong was in the supposition that they would be immunized from permanent injunctive relief. Their penalty, however, as the Court will very soon lay out, will be the obligation to cease and desist from using the word "WORLD" or a globe in connection with all their operations, a penalty that obviously carries with it some cost. For the record, however, irrelevant though it may be for "likelihood of confusion" analysis, Defendants' good faith in continuing to use their marks cannot be doubted.

g) *Actual confusion* —While, as indicated, there is no requirement that there be evidence of actual confusion, where in fact such proof is present, it is deemed "potent evidence of infringement." *Lone Star*, 43 F.3d at 937. *See also Tools U.S.A. & Equip. v. Champ Frame Straightening Equipment, Inc.*, 87 F.3d 654 (4th Cir. 1996). Although surveys are recognized as an especially effective means of demonstrating actual confusion, *see* 3 *McCarthy* § 23:17 and 5 *McCarthy* § 32:158, they are by no means the exclusive means. Indeed, as Plaintiff's marketing expert pointed out, surveys over trademark confusion can sometimes contribute to the very confusion they are intended to study. In any event, anecdotal evidence of confusion has been recognized in other cases, *see, e.g., Lone Star*, 43 F.3d at 927; *Tools, U.S.A.*, 87 F.3d at 661, and a number of such instances were testified to by World Gym in this case. Plaintiff's private investigator, for example, related that on more than one occasion in telephone calls to Fitness World facilities, when he identified himself as a World Gym member, he was told by Fitness World's receptionists that such confusion occurs "all the time."

Based on an objective reading of all these factors, the Court concludes that a high likelihood of confusion exists between Plaintiff's and Defendants' marks. "Furthermore, a judge is free to draw upon his own experience and observation to make an informed judgment as to the likelihood of confusion apt to be spawned by strongly analogous symbols." *Volkswagenwerk AG v. Hoffman*, 489 F.Supp. 678, 682 (D.S.C. 1980). The Court's experience and observation here likewise impel to the conclusion that there is a strong likelihood of confusion.

The Court therefore finds in favor of Plaintiff with regard to its claim of federal service mark and trademark infringement under 15 U.S.C. § 1114(1) (Count I). The individual Defendants as well as the corporate Defendants will be held liable inasmuch as they have personally participated in the unlawful acts. *See Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 149 (4th Cir.1987). Since the legal framework for trademark infringement under Maryland law is the same as federal law, *see Perini*, 915 F.2d at 125, n. 3, all Defendants are also in liable for trademark infringement under the common law of Maryland (Count V).

## IX.

In Count IV, Plaintiff has asked for relief under the Federal Trademark Dilution Act of 1995, 15 U.S.C. § 1125. Under the Act the owner of a "famous mark" is given protection "against another person's commercial use ... of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark." 15 U.S.C. § 1125(c)(1). A successful claimant may be given injunctive and, if willful violation is proved, restitutionary, compensatory or specific relief in the form of destruction of offending articles. *Ringling Brothers–Barnum & Bailey Combined Shows, Inc. v. Utah Div. of Travel Dev.*, 170 F.3d 449, 450 (4th Cir.1999).

The Act defines "dilution" as: "The lessening of the capacity of a famous mark to identify and distinguish goods or services,

regardless of the presence or absence of—
1) competition between the owner of the famous mark and other parties, or 2) likelihood of confusion, mistake, or deception."
15 U.S.C. § 1127.

█ To establish dilution, one must prove that: 1) defendant has made use of a junior mark sufficiently similar to the famous mark to evoke in a relevant universe of consumers a mental association of the two that 2) has caused 3) actual economic harm of the famous mark's value by lessening its former selling power as an advertising agent for its goods or services. *Ringling Bros.*, 170 F.3d 449, 460.

█ The Court will assume that World Gym's marks are famous and that the name Fitness World evokes "a mental association" with World Gym Fitness Centers. The key question is whether there has actual economic harm to the World Gym mark's value, *i.e.* whether its former selling power as an advertising agent for World Gym's goods or services has been lessened.

Plaintiff's only submission in this regard is a declaration that it has suffered direct economic harm because it will have difficulty in licensing its trademarks if Defendants and others can use such trademarks as Fitness World and the design of a globe without charge. This argument does not suffice.

As the Fourth Circuit stated in the *Ringling Brothers* case, proof of actual dilution caused by the junior mark is required and will not simply be inferred from the fact that there has been proof of harm only to the mark's distinctiveness. 170 F.3d 449, 1999 WL 140600 at *16. As the Court observed, "[p]roof will be difficult, because actual, consummated, dilutive harm and its cause are difficult concepts. But the concept is a substantively viable one, and the means of proof are available." *Id.* The court went on to suggest that "without attempting to chart the exact shape and course of advocacy that might prove" dilution, three general means are

available. *Id.* First, proof of an actual loss of revenues. Second, a skillfully constructed consumer survey. And third, though only "as indirect evidence that might complement other proof," such relevant contextual factors as the extent of the junior mark's exposure, the similarity of the marks, and the firmness of the senior mark's hold. *Id.*

Plaintiff has not submitted the hard proof of actual economic harm that *Ringling Brothers* demands in support of this cause of action. Accordingly, judgment will be entered for Defendants on the Federal Dilution Act Count.

**X.**

Plaintiff's claims for federal statutory and state common law of trade disparagement, Counts III and VII respectively, are rejected.

█ This tort, one of several collectively known as "injurious falsehood," involves publication of a statement of fact that is intentionally and recklessly false and that causes pecuniary harm to a plaintiff's economic interests. 2 Dobbs, *Law of Remedies*, § 6.8(1) (2d.Ed.1993). Among other things, the plaintiff must prove that statement is disparaging, false, and that it has sustained special damages in the form of pecuniary loss. Keeton on Torts (§ 128) (5th Ed.1984).

█ World Gym's suggestion that it was disparaged when Fitness World advertised that its club was "voted number one" reflects too delicate a sensitivity on World Gym's part. At most, this was puffing and quite possibly not even false if, as one of Fitness World's witnesses testified, a vote was taken among a small circle of "voters." With regard to Plaintiff's claim that Defendants unfairly asserted that their clubs were the only ones with a rate guarantee while Plaintiff's franchisee was in fact offering the same benefit, the Court will assume arguendo that that was a false and even potentially disparaging statement. However, since Plaintiff has again

failed to prove the requisite special damages this cause of action must fail.

## XI.

■ Plaintiff includes a count for unfair competition under the common law of Maryland.

The Maryland Court of Appeals has pointed out that the doctrine of unfair competition is broader than trademark law, which is itself a part of the doctrine of unfair competition. *See Edmondson Village Theatre v. Einbinder*, 208 Md. 38, 116 A.2d 377 (1955). From its Amended Complaint, Plaintiff appears to be claiming unfair competition in the sense that Defendants allegedly passed off or attempted to pass off in public Plaintiff's goods or services as those of Defendants. *See Braiterman–Fedder Co. v. Cardilli*, 156 Md. 699, 145 A. 338 (1929). *See also Dixi–Cola Laboratories v. Coca–Cola Co.*, 117 F.2d 352 (4th Cir.1941), *cert. denied* 314 U.S. 629, 62 S.Ct. 60, 86 L.Ed. 505 (1941). As Plaintiff frames the tort, the further suggestion is that Defendants acted willfully and intentionally to portray themselves as being affiliated with the Plaintiff.

The Court finds no evidence that any Defendant either passed off or attempted to pass off as their own services or goods that appeared to be originating with Plaintiff.

Judgment will be entered for the Defendants on this Count.

## XII.

Because this is not an exceptional case within the meaning of the attorneys' fees provision of the Federal Trademark Act, *see* 15 U.S.C. § 1117(a), Plaintiff's request for attorneys' fees will be denied.

## XIII.

Defendants, by counterclaim, have asked the Court to cancel Plaintiff's registration of the trademark "WORLD" because Plaintiff has abandoned the mark. The Court, to be sure, has authority to grant this sort of relief "in any action involving a registered mark." 15 U.S.C. § 1119. *See also Dymo Industries, Inc. v. Tapeprinter, Inc.*, 326 F.2d 141 (9th Cir.1964).

According to Defendants, although World Gym registered the term "WORLD" in 1995, it has never promoted the single word trademark "world." All specimens submitted, say Defendants, are of the two word "World Gym" trademark. Because the claimed trademark "world" has never been a trademark used in commerce, Defendants argue that the registration is void and must be canceled.

World Gym responds that its registrations show that its mark is effectively "WORLD" by itself. This, it says, is particularly evidenced by its disclaimer of the word "gym" in its registrations. *Compare Lone Star*, 43 F.3d at 926, n. 1. Plaintiff's registrations are presumptively valid. 15 U.S.C. § 1057(b). Moreover, as Plaintiff has shown, in stark contrast to what Defendants assert, there are in fact several instances where the word "WORLD" alone has been promoted as Plaintiff's mark commercially.

The Court agrees with Plaintiff that its registered trademarks and service marks have not lost their distinctiveness and continue to function in such a way as to distinguish Plaintiff's facilities from those of other fitness centers.

Defendants' request that Plaintiff's trademark registration be canceled is denied.

## XIV.

Summing up, the relief that will be ordered in this case is as follows:

1) Defendants and anyone acting on their behalf will be permanently enjoined from in any way using the service marks and trademarks "Fitness World" and the design of a globe, including but not limited to distributing, advertising, selling and/or offering for sale and distributing any ser-

vices or merchandise which infringe said marks;

2) Defendants will be ordered to destroy or otherwise dispose of any signage, merchandise, advertising, or other materials, that may in any way reflect the infringing marks or names as previously described;

3) Defendants shall have 90 days from the date of this Order to implement its terms;

4) At the end of said 90 days, Defendants shall file a written report with the Court, copy to Plaintiff, indicating their full compliance with the terms hereof.

A separate Order will be entered.

### ORDER OF JUDGMENT

This matter having come on for a bench trial before the undersigned, it is this 26 day of April, 1999

ORDERED that judgment is hereby ENTERED in favor of Plaintiff World Gym Licensing, Ltd. and against Defendants Fitness World, Inc., et al., jointly and severally; and it is further

ORDERED that all Defendants are permanently enjoined from using the trademarks and service marks "Fitness World" and a design of a globe and in any way directly or indirectly infringing Plaintiff's marks, including but not limited to distributing, advertising, selling and/or offering for sale and distributing services or merchandise which infringe said marks; and it is further

ORDERED that Defendants shall destroy or otherwise dispose of any signage, merchandise, or other materials that may in any way reflect the infringing marks or names as previously discussed; and it is further

ORDERED that Defendants shall have ninety (90) days from the date of this Order to implement its terms; and it is further

ORDERED that at the end of said 90 days, Defendants shall file a written report with the Court, copy to Plaintiff, indicating

their full compliance with the terms of this Order; and it is further

ORDERED that Plaintiff's request for monetary damages, punitive damages, and attorneys fees is DENIED; and it is further

ORDERED that Defendant's counterclaim for cancellation of Plaintiff's service marks is DENIED.