**A.C. LEGG PACKING COMPANY, INC., an Alabama corporation, Plaintiff,**

**v.**

**OLDE PLANTATION SPICE COMPANY, INC., a Maryland corporation, Defendant.**

**Civil No. PJM 98–2971.**

United States District Court, D. Maryland.

Aug. 6, 1999.

William Paul Atkins, Lisa A. Dunner, Peter W. Gowdey, Pillsbury Madison & Sutro, LLP, Washington, DC, for plaintiff.

Stephen Christopher Swift, Arlington, VA, for defendant.

*OPINION*

MESSITTE, District Judge.

I.

1) This is an action for trademark infringement and unfair competition under the Trademark Act of 1946, as amended, 15 U.S.C. § 1114(a) (Count I) and 15 U.S.C. § 1125(a) (Count II) respectively, and under the common law of the State of Maryland (Counts V and VI).[1]

2) Plaintiff A.C. Legg Packing Company, Inc. ("A.C.Legg") is an Alabama corporation having its principal place of business in Birmingham, Alabama.

3) Defendant Olde Plantation Spice Company, Inc. ("OPSC") is a Maryland corporation having its principal place of business in Gaithersburg, Maryland.

4) A.C. Legg blends, custom blends, packages, distributes and sells a variety of seasonings, spices, and seasoning products, primarily for meat and products throughout the United States. It also sells mulling spices, cinnamon, and nutmeg.

5) Since 1927, A.C. Legg has used the trademark OLD PLANTATION across the country, including the State of Maryland, to distinguish its seasonings from similar goods distributed by others.

6) Throughout this period, A.C. Legg has actively promoted distribution of its OLD PLANTATION seasonings and spices, with the result that its seasonings have at all times reflected a high standard of quality.

7) Through its effort in the marketing and sale of its seasonings and spices, A.C.

1. The Complaint originally included claims, subsequently withdrawn, for dilution under the Federal Antidilution Act (Count III), violation of Maryland Business Regulation Article, Section 1–414 (Count IV), and violation of Maryland Commercial Law Article (Deceptive Practices Act), § 13–301.

Legg has created considerable goodwill in association with its business, goods and trademark.

8) Because of A.C. Legg's long-term use of its mark, OLD PLANTATION seasonings/spices have become popular and well-known in the seasoning/spice and food businesses.

9) OPSC, which has been in business since 1993, sells spices for mulling beverages (principally in tea bags), packages of spices for apple pie, apple pound cake, pumpkin pie, or pumpkin cake, cinnamon sticks, and gift tins containing these products. OPSC sells these products under the trademark OLDE PLANTATION SPICE. OPSC has never sold seasonings for meats.

10) A.C. Legg claims that in using the mark OLDE PLANTATION SPICE in connection with its spice sales, OPSC has committed the various torts set forth in the Complaint.

11) The Court has heard the case on the merits over a period of 2 ½ days. Witnesses and exhibits have been offered by both sides. On the basis of the entire record, the Court finds in favor of Plaintiff A.C. Legg as to the federal and common law trademark infringement counts and for Defendant OPSC on all other counts. The Court will order injunctive and monetary relief as hereinafter set forth.

## II.

12) In 1931, the U.S. Patent and Trademark Office issued Trademark Registration No. 286,124 for A.C. Legg's OLD PLANTATION mark and design. The registered mark consists of the words "OLD PLANTATION" displayed in red letters on a yellow panel having a red border. The mark is for "seasoning for sausages, meats or other foods, in class 46 (Int.Cl.30)."

13) As early as 1991, OSPC's previously unincorporated predecessor began to use the mark OLDE PLANTATION SPICE. Since that time, OPSC's advertising has frequently displayed the name OLDE PLANTATION SPICE in red rounded letters, although typically against a white background.

14) Both A.C. Legg and OPSC sell and market seasonings and spices.

15) Both are wholesalers of spices.

16) Both sell their seasonings and spices through independent representatives.

17) Both supply private label mulling spices.

18) Both sell, package and distribute mulling spices.

19) A core customer base for both parties is made up of country stores and farmer's markets.

20) Both advertise their goods through similar if not the very same media, including mailings, newspapers, magazines and trade shows.

21) A.C. Legg has an Internet web site.

22) OPSC's mark OLDE PLANTATION SPICE is also found on the Internet.

## III.

23) In or about the fall of 1997, A.C. Legg learned of the existence of OPSC after an A.C. Legg customer attending a gift show in Atlanta observed an OLDE PLANTATION SPICE display and confused it with A.C. Legg's OLD PLANTATION product. A.C. Legg's customer, Camie Frix of CADI Corporation in Birmingham, had previously purchased mulling spices from A.C. Legg; OPSC was marketing mulling spices at the Atlanta gift show.

24) On October 15, 1997, A.C. Legg's attorney wrote to OPSC charging it with trademark infringement and demanding that it cease and desist from all use of the mark OLDE PLANTATION SPICE for spices.

25) On October 20, 1997, Richard Denchfield, a principal and Vice–President of OPSC, telephoned A.C. Legg's counsel.

26) In that telephone conversation, Denchfield admitted that over the years he had received at least a few calls seeking OLD PLANTATION seasonings or spices, though Denchfield says he had no idea of who that company might be or where it might be located.

27) The October 15, 1997 cease and desist letter put OPSC on notice of A.C. Legg's federal registration for OLD PLANTATION, its common law rights in OLD PLANTATION, and its claims against OPSC for trademark infringement and unfair competition under both federal and state law.

28) Over the next approximately 7 months, the parties through counsel engaged in what were ostensibly settlement negotiations.

29) Denchfield, however, admitted that OPSC never had any intention of settling or acquiescing in A.C. Legg's demands.

30) Despite the express urging of Juan Chardiet, a Northern Virginia intellectual property attorney, that it do so, OPSC at no time conducted a trademark search nor obtained a formal opinion of counsel as to whether the OLDE PLANTATION SPICE mark infringed the OLD PLANTATION mark.[2]

31) Throughout this period, OPSC continued to use the mark OLDE PLANTATION SPICE.

32) Denchfield admits that he and his attorneys were acting "deceitfully" in pursuing the settlement discussions because they needed to gain time so that OPSC might file its own trademark application.

33) In fact, on February 25, 1998, while appearing to be engaged in settlement discussions with A.C. Legg and without A.C. Legg's knowledge, OPSC, through its attorneys, filed an application to register the trademark OLDE PLANTATION SPICE in the United States Patent and Trademark Office, Application Serial No. 75/440,111.

34) The application sought to register the mark for "spices for cider and wine, mulling spice, apple pie spice, apple pound cake spice, pumpkin pie spice, pumpkin cake spice, and cinnamon sticks in Class 30." The application disclaimed the generic term "spice."

35) Although an examining attorney at the U.S. Patent and Trademark Office stated that she found no similar registered or pending mark in her search that would bar the OLDE PLANTATION SPICE registration,[3] with the filing of the present lawsuit by A.C. Legg, the application process was suspended.

36) OPSC to this day has persisted in its use of the OLDE PLANTATION SPICE mark.

## V.

37) A.C. Legg's lead count, Count I, alleges federal trademark infringement.

38) In its recent opinion in *World Gym Licensing, Ltd. v. Fitness World, Inc.*, 47 F.Supp.2d 614, 621–22 (D.Md.1999), this

---

**2.** Denchfield testified at trial that Chardiet rendered an oral opinion as to non-infringement. Chardiet, called by both sides as a witness at trial, denied doing this or that he would ever do such a thing. Denchfield admitted he paid nothing to Chardiet for the alleged infringement opinion.

**3.** In OPSC's application for registration of the mark, OPSC's President Marta Denchfield declared under oath that to the best of her knowledge, information and belief, "no other person, firm, corporation or association has the right to use the identified mark in commerce, either in the identical form thereof *or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such person, to cause confusion, or to cause mistake or to deceive.*" (Emphasis supplied)

At the time this statement was made, OPSC had been aware of A.C. Legg's claims for over four months. At best, the statement was the product of willful ignorance; at worst, it was false and perjurious.

Court had occasion to discuss the relevant standards:

■ 39) To establish trademark infringement under the Federal Trademark Act, the owner of a valid trademark must establish that the defendant's use of a mark is "likely to cause confusion or to cause mistake or to deceive." 15 U.S.C. § 1114(1). "In applying this standard [the Fourth Circuit] has emphasized that a trademark owner need not demonstrate actual confusion." *Lone Star Steakhouse and Saloon, Inc. v. Alpha of Virginia, Inc.,* 43 F.3d 922, 933 (4th Cir.1995).

■ Lone Star sets out the factors that the court is to consider in determining whether there is a likelihood of confusion:

a) The strength or distinctiveness of the marks;

b) The similarity of the marks;

c) The similarity of the goods and services the marks identify;

d) The similarity of the facilities the two parties use in their business;

e) The similarity of advertising used by the two parties;

f) Defendants' intent; and

(g) Actual confusion.

43 F.3d at 993. *See also Sara Lee Corp. v. Kayser–Roth Corp.,* 81 F.3d 455 (4th Cir.1996); *Pizzeria Uno Corp. v. Temple,* 747 F.2d 1522, 1527 (4th Cir.1984); *Perini Corp. v. Perini Construction, Inc.,* 715 F.Supp. 719 (D.Md.1989), *rev'd on other grounds,* 915 F.2d 121 (4th Cir.1990) . . . .

a) Strength of the trademark—McCarthy says that "the true relative strength of a mark can only be fully determined by weighing two aspects of strength:

1) Conceptual strength—the placement of the mark on the spectrum of marks; and

2) Commercial strength—the market place recognition value of the mark. 2 McCarthy [on Trademarks and Unfair Competition], § 11:83, p. 11–142."

■ The spectrum of distinctiveness of marks refers to whether the mark in and of itself is inherently distinctive or noninherently distinctive. One subcategory of inherently distinctive marks are arbitrary marks, defined as those that comprise " 'words, symbols, pictures, etc. that are in common linguistic use but which, when used with the goods or services issue, neither suggest nor describe any ingredient, quality or characteristic of those goods or services.' 2 McCarthy § 11:11, pp. 11–15."

40) *Strength or Distinctiveness of Mark*

■ The OLD PLANTATION mark is inherently distinctive because the words "Old Plantation" do not suggest any mental image of the associated product nor describe it in any way. *Sara Lee Corp.,* 81 F.3d at 464. Moreover, the fact that the Patent and Trademark Office has recognized the mark as distinctive is prima facie evidence of the mark's distinctiveness. *Lone Star,* 43 F.3d at 934.

41) A.C. Legg's OLD PLANTATION mark also has marketplace strength. *See* McCarthy, § 11.83, pp. 11–182. A.C. Legg has continuously used the mark OLD PLANTATION for seasonings and spices since 1927. During the past seventy-two years, it has advertised its OLD PLANTATION spices in trade magazines, in various brochures and on the Internet. In the marketplace of retailers that use or resell spices, A.C. Legg's OLD PLANTATION spices are well-known. Such a strong mark "enjoy[s] a wide latitude of protection in the determination of whether there will be a likelihood of confusion." *World Gym Licensing, Ltd.,* 47 F.Supp.2d 614, 622.

42) *Similarity of Marks*

In evaluating similarity, "the marks need only be sufficiently similar in appearance, with the greater weight given to the dominant or salient portions of the marks." *Lone Star,* 43 F.3d at 936. OPSC's OLDE PLANTATION SPICE mark is nearly

identical in appearance to A.C. Legg's OLD PLANTATION mark, differing only in the spelling of "olde" and the addition of the generic word "spice." The marks are identical in sound and connotation.

The dominant portion of both marks is OLD PLANTATION. In a case such as this, when the dominant portions are identical, there is a strong likelihood of confusion. *Id.* Indeed, with little weight given to generic words, the addition of the word "spice" to OPSC's mark does not detract from the similarity between the marks, particularly since the word simply identifies the goods sold by both parties. *Sea Roy Corp. v. Parts R Parts, Inc.*, No. 98–1028, 173 F.3d 851, 1999 WL 111281 *7 (4th Cir. Mar. 4, 1999).

The fact that A.C. Legg's federally registered mark includes a red border does not detract from the essential similarity of the marks.

### 43) *Similarity of Goods*

There is no question that both A.C. Legg and OPSC sell spices. OPSC's contention that it sells "spices" while A.C. Legg sells "seasonings" is a distinction without a difference. A "seasoning" is "a salt or an herb, *spice,* or the like, for heightening or improving the flavor of food," *Webster's Encyclopedic Unabridged Dictionary of the English Language* (1986) (Emphasis supplied).

It is true that A.C. Legg sells predominantly spices for sausages and meats, its historic market, while OPSC sells spices for pies, cakes, and sweets. But both parties market mulling spices, that is, spices used to sweeten or flavor drinks. While there may not be a total overlap of products as between the companies, exact identity is not required. Confusion may result if the product lines are sufficiently similar or the product of the later user is a natural extension of the product line of the prior user. *See* McCarthy, 3 §§ 24:7. The Court finds that likely in the present case.

### 44) *Similarity of Facilities*

Given that both parties are wholesalers, *i.e.* that neither is engaged in store-front sales, the similarity of their facilities may seem, at first blush, to be an inapplicable factor. Nonetheless, their channels of trade—if not their physical facilities—are quite similar. As wholesalers, both use regional sales representatives to sell to retailers throughout the United States. Both provide mulling spice to private labellers. Both pitch their sales in large part to country stores and farmer's markets.

### 45) *Similarity of Advertising*

While it does not appear that the parties have as yet advertised in the very same trade magazines or trade show brochures, both use this type of media. Typically both take out quarter page ads, A.C. Legg's OLD PLANTATION mark being in red rounded letters on a yellow background, OPSC's OLDE PLANTATION SPICE mark frequently being in red rounded letters though usually on a white background.

### 46) *OPSC's Intent*

■ A party may be liable for trademark infringement even if it acted in good faith. *Pizzeria Uno,* 747 F.2d at 1535. Willful infringement is *a fortiori* actionable. It also bears on the question of attorneys fees, satisfying the exceptionality requirement for such an award under 15 U.S.C. § 1117(a). *See also H.W. Carter & Sons, Inc. v. William Carter Co.,* 913 F.Supp. 796 (S.D.N.Y.1996).

Although OPSC had reason to suspect a possible infringement problem as early as 1996 when it received customer inquiries regarding OLD PLANTATION, certainly by mid-October, 1997, when it received the cease and desist letter from A.C. Legg's counsel, it was on notice of a strong possibility of infringement.

From that point on, OPSC acted in blind disregard of the peril it faced. OPSC's intellectual property attorney Juan Char-

diet clearly and forcefully warned OPSC that it risked being found a willful infringer if it continued using A.C. Legg's mark without conducting a trademark search and without obtaining an infringement opinion from counsel. OPSC ploughed ahead notwithstanding. Such willful disregard unquestionably bears on the question of an infringer's bad faith. *Cf. International Star Class Yacht Racing Assoc. v. Tommy Hilfiger, U.S.A., Inc.,* 80 F.3d 749, 754 (2d Cir.1996) (hereinafter "ISCYRA").

But OPSC did not merely fail to obtain an opinion of counsel. It actively engaged in a scheme designed to deceive A.C. Legg. In the face of A.C. Legg's request that it stop using the OLDE PLANTATION mark, OPSC ostensibly entered into settlement discussions with A.C. Legg. During these discussions, OPSC asserted that it needed time to consider the matter. But while A.C. Legg thought the parties were negotiating in good faith, OPSC was in fact actually continuing to sell spices under the infringing mark, was increasing its inventory of infringing goods, and was attempting to register its mark with the Trademark Office.

The Court finds that, commencing mid-October, 1997, OPSC acted in bad faith.

### 47) *Actual Confusion*

To prove infringement, there is no requirement that plaintiff show actual confusion, but any evidence of actual confusion is strong proof of the likelihood of confusion. *World Gym Licensing, Ltd.,* 47 F.Supp.2d at 624 (noting that actual confusion is "deemed potent evidence of infringement."). Such evidence "is entitled to substantial weight as it provides the most compelling evidence of likelihood of confusion." *Lone Star,* 43 F.3d at 937. Even anecdotal evidence of actual confusion, in proper circumstances, may bolster a finding of a likelihood of confusion suggested by the other factors. *Id.* (considering anecdotal evidence of actual confusion occurring "on more than one occasion").

OPSC first became aware of customer confusion when, in 1996, it received telephone calls from customers looking for OLD PLANTATION spice products. In addition, A.C. Legg's customer for mulling spices, Camie Frix, became confused when she observed OPSC's OLDE PLANTATION SPICE display at the Atlanta gift show in 1997. While anecdotal, this evidence bolsters the conclusion that further confusion is likely.

The Court's own judgment in the matter, a proper factor to take into account, *see Volkswagenwerk A.G. v. Hoffman,* 489 F.Supp. 678, 682 (D.S.C.1980), is also that confusion is likely, given the virtual identity of name, sound, and general product line of the parties. Indeed, the likelihood of confusion has increased as A.C. Legg has moved into a specific product line identical to that of OPSC, *i.e.* into the marketing of mulling spices.

48) The Court concludes that OPSC has infringed A.C. Legg's trademark rights under the Trademark Act of 1946 and that from October 1997 to the present the infringement has been willful.

### VI.

49) A.C. Legg's claim of trademark infringement under federal law also suffices to establish its claim of trademark infringement under the common law of Maryland. *See Perini Corp.,* 915 F.2d at 125 n. 3 (4th Cir.1990).

Since the remedies are the same whether the claim is based on federal statutory or state common law, however, no additional discussion is necessary as to the common law claim.

Judgment will be entered in favor of A.C. Legg as to Count V of the Complaint.

### VII.

50) A.C. Legg has not actively pursued its federal statutory and state common law claims of unfair competition. This tort—which is substantially the same in both its federal and state forms—is

considerably broader than the claim of trademark infringement, encompassing such claims as passing off, false advertising, trade libel and trade disparagement. A.C. Legg has presented no evidence establishing such torts, apart from the trademark infringement claims. Accordingly, judgment will be entered in favor of OPSC on the federal statutory and state common law claims of unfair competition (Counts II and VI respectively).

## VIII.

51) A.C. Legg is entitled to appropriate injunctive relief in order to protect its mark. 15 U.S.C. § 1116. The Court will therefore enter an order to the following effect:

A) OPSC, its employees and all those in privity or active concert therewith, will be permanently enjoined and restrained from any and all uses of "OLDE PLANTATION SPICE," or any mark confusingly similar to A.C. Legg's "OLD PLANTATION" mark, or any colorable imitation or confusingly similar mark thereof.

B) OPSC will be required to promptly withdraw its application with the U.S. Patent and Trademark Office for registration of the mark OLDE PLANTATION SPICE.

C) OPSC will be required to confirm to the Court, in writing and under oath, that it has complied and the manner in which it has complied with the foregoing.

■ D) The Court notes that OPSC also has registered the name "OLDE TRADITION SPICE." Richard Denchfield testified at trial that this mark was pursued on the possibility that the Court might enjoin the use of the OLDE PLANTATION SPICE mark. A.C. Legg's counsel has merely countered with the suggestion that "OLDE TRADITION SPICE" is likely to be confusing to customers. The Court does not find that name confusingly similar and will approve its use. OPSC may also use any color scheme.

E) OPSC has asked for 3 months to dispose of its existing inventory. There is no need to debate equities of this request, although it might be observed that OPSC has in reality had since mid-October 1997 to reorganize its affairs. However, since A.C. Legg makes no claim to OPSC's profits for 1999, the Court will grant OPSC until November 6, 1999 to dispose of its inventory bearing the label OLDE SPICE PLANTATION, but in no event shall OPSC advertise under the name "OLDE PLANTATION SPICE."

F) Thereafter, OPSC may use paste-over labels on its current OLDE PLANTATION SPICE packaging, provided that appropriate samples of same are submitted in advance to Plaintiff's counsel and that they meet counsel's approval.

## IX.

52) A.C. Legg has proved no actual damages, but seeks recovery of certain of OPSC's profits on a theory of unjust enrichment. Specifically it seeks to recover OPSC's profits for the years 1997 and 1998.

■ "The unavailability of actual damages as a remedy ... does not preclude [a trademark owner] from recovering an accounting of [the defendant's] profits or attorney fees." *ISCYRA,* 80 F.3d at 753 (noting, however, that "a plaintiff must prove that the infringer acted in bad faith."). The reason is plain:

> It seems scarcely equitable ... for an infringer to reap the benefits of a trademark he has stolen, force the registrant to the expense and delay of litigation, and then escape payment of damages on the theory that the registrant suffered no loss.... It is, therefore, essential that the trial courts carefully fashion remedies which will take all the economic incentive out of trademark infringement.

*United States Olympic Committee v. Union Sport Apparel,* 220 U.S.P.Q. 526 (E.D.Va.1983) (citations omitted).

But "theft" on a later user's part is not a pre-requisite to finding bad faith. A defendant's failure to follow an attorney's advice to conduct a full-scale trademark search or to obtain an infringement opinion and its persistent use of a mark in the face of cognizance of the potentially infringing nature of the mark is sufficient. *Cf. ISCYRA*, 80 F.3d at 754 (willful ignorance should not provide a means by which a defendant can evade its obligations under trademark law). OPSC's wilfulness, hence bad faith, justifies the decision that it be made to account for at least some of its profits in the present case.

A.C. Legg only seeks an accounting of OPSC's profits for the years 1997 and 1998, not 1999. For the year 1997 it asks for $46,537 and for 1998 it asks for $139,067.[4] But as to 1997, it is clear that A.C. Legg's cease and desist letter was not received by OPSC until mid-October of that year. It is from that point forward that the Court has found bad faith on the part of OPSC. Thus, despite A.C. Legg's suggestion that the bulk of OPSC's sales come in the fall of the year, the Court is inclined to annualize OPSC's profit and award A.C. Legg only 2.5/12 of OPSC's 1997 profits, which amounts to $9,695.20.

The year 1998 is an easier case. The full amount, $139,067, is awardable. The total for the two years is thus $148,762.20.

Where, as here, the infringement has been willful, the plaintiff is entitled to treble damages. 15 U.S.C. § 1117(b). A.C. Legg, however, has only prayed damages of 1 ½ times OPSC's profits. Accordingly, $148,762.20 × 1 ½ amounts to $223,143.30.

---

**4.** "In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a). *See also Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge*, 316 U.S. 203, 206–7, 62 S.Ct. 1022, 86 L.Ed. 1381 (1942).

A.C. Legg has proved OPSC's sales for the relevant period, but the record as to OPSC's costs and deductions is silent.

The Court will award A.C. Legg monetary damages in that amount.

## X.

53) Finally, there is the matter of attorneys fees and costs. Attorneys fees are awardable in "exceptional" cases, *id.*, which refers to cases where the act of infringement may be characterized as malicious, fraudulent, deliberate or willful. 15 U.S.C. § 1117(a). *The Five Platters, Inc. v. Purdie*, 419 F.Supp. 372, 385 (D.Md.1976). The same is true as to costs. *See e.g. The Frostie Co. v. Dr. Pepper Co.*, 361 F.2d 124, 127 (5th Cir.1966) (costs in trademark infringement cases allowable only where wrongdoer's action is fraudulent, willful, or in bad faith).

The Court has found OPSC acted willfully after it received A.C. Legg's October, 1997 cease and desist letter. In consequence, A.C. Legg was eventually forced to litigate its claim wholly apart from the legal expenses it incurred while OPSC stalled for time while trying to register its mark.

The Court believes A.C. Legg is at least entitled to reasonable attorneys fees and costs from the point of preparing and filing this lawsuit forward.

A.C. Legg's counsel is directed to file a Petition for Attorneys Fees and Costs in conformity with the Local Rules of this Court.

## XI.

54) A separate Order will be entered implementing this Opinion.

Prior to trial, OPSC refused to provide detailed cost data to A.C. Legg, after agreeing to do so. The Court warned OPSC's counsel at the pre-trial conference that OPSC would be precluded from offering such evidence at trial. When OPSC tried to offer such evidence at trial, A.C. Legg objected and the Court sustained the objection.

The only evidence of profits, therefore, is OPSC's sales revenues for the relevant accounting period.

### ORDER

This case having come on for trial before the undersigned sitting without a jury, and the evidence and arguments of counsel having been considered, it is this 6th day of August, 1999

ORDERED that judgment is ENTERED in favor of Plaintiff A.C. Legg Packing Company, Inc. and against Defendant Olde Plantation Spice Company, Inc. (OPSC) as to Counts I and V of the Complaint; and it is further

ORDERED that judgment is ENTERED in favor of Defendant OPSC and against Plaintiff A.C. Legg as to Counts II and VI; and it is further

ORDERED that:

a) Except as hereinafter provided, OPSC, its employees and all those in privity or active concert therewith, are PERMANENTLY ENJOINED and RESTRAINED from any and all uses of "OLDE PLANTATION SPICE," or any mark confusingly similar to A.C. Legg's "OLD PLANTATION" mark, or any colorable imitation or confusingly a similar mark thereof;

b) OSPC shall promptly withdraw its application to the U.S. Patent and Trademark Office for registration of the mark OLDE PLANTATION SPICE;

c) OPSC shall confirm to the Court, in writing and under oath, that it has complied and the manner in which it has complied with the foregoing;

d) OPSC may use the name "OLDE TRADITION SPICE," which the Court finds not to be confusingly similar to Plaintiff's mark and may also use any color scheme;

e) For a period of 3 months from this date, *i.e.* until November 6, 1999, OPSC shall have the right to dispose of its existing inventory bearing the label OLDE PLANTATION SPICE, but in no event shall it advertise under the name "OLDE PLANTATION SPICE";

f) After November 6, 1999, OPSC may use paste-over labels on its current OLDE PLANTATION SPICE packaging, provided that appropriate samples of same are submitted in advance to Plaintiff's counsel and that they meet counsel's approval;

g) Judgment in the amount of $223,-143.30 is ENTERED in favor of Plaintiff A.C. Legg and against Defendant OPSC;

h) A.C. Legg shall submit an appropriate Petition for Attorney's Fees and Costs in conformity with the Local Rules of this Court.