**STERLING ACCEPTANCE CORPORATION, Plaintiff,**

v.

**TOMMARK, INC., d/b/a Sterling Associates, Defendant.**

No. CIV. H–01–2921.

United States District Court, D. Maryland.

Sept. 30, 2002.

Morton J. Rosenberg, Jun Young Lee, Rosenberg Klein and Lee, Ellicott City, MD, Harry Brett Siegel, Law Office of Harry Brett Siegel LLC, Columbia, MD, for Plaintiff.

John Paul Moran, Matthew A. Pater, Swidler Berlin Shereff Friedman LLP, Washington, DC, for Defendant.

### *MEMORANDUM OPINION*

ALEXANDER HARVEY, II, Senior District Judge.

In this civil action, plaintiff Sterling Acceptance Corporation has brought suit against defendant Tommark, Inc., alleging federal trademark claims and a claim of unfair competition under Maryland common law. Pursuant to a Scheduling Order entered by the Court, the parties have now completed discovery.

Presently pending before the Court are defendant's motion for summary judgment and plaintiff's motion for partial summary judgment. Defendant has also filed a motion to strike certain affidavits which were submitted by plaintiff in support of its motion for partial summary judgment. Memoranda and voluminous exhibits in support of and in opposition to the pending motions have been submitted by the parties. In support of their positions, the parties have submitted affidavits, exhibits and excerpts from depositions taken during discovery. A hearing on the motions has been held in open court. For the reasons stated herein, the Court will grant in part and deny in part defendant's motion to strike affidavits, will grant defendant's motion for summary judgment and will deny plaintiff's motion for partial summary judgment.

I

*Background Facts*

Plaintiff Sterling Acceptance Corporation is a Maryland corporation with its principal place of business in Edgewater, Maryland. Plaintiff was founded in 1987 and is in the business of providing marine lending services to the boat buying public and also recreational vehicle lending services to private individuals. Marine lending services include the making of arrangements for banks to provide loans to prospective purchasers of boats and other marine vessels. Plaintiff offers its services both regionally and nationally. By 1990, plaintiff had made arrangements for boat loans in at least twenty-seven states, including Massachusetts. Since 1996, plaintiff has handled approximately 850 loans totaling $103 million.

Since its inception, plaintiff has used the mark "STERLING ACCEPTANCE CORPORATION" to identify its business. That is also its corporate name. On August 1, 1995, the United States Patent & Trademark Office issued to plaintiff United States Trademark Registration No. 1,908,779 for a mark consisting of a pyramidal shaped design with a dollar sign contained therein and with the words "STERLING ACCEPTANCE CORPORATION" underneath. The words "STERLING," "ACCEPTANCE" and "CORPORATION" appear on three different lines, one word on each line, directly below the pyramidal

design. The spacing of the words is such that each word is exactly as long as the base of the pyramidal design. In marketing its services, plaintiff uses various combinations of the word "Sterling" together with the pyramidal design and the statutory notice of registration symbol ®.

Plaintiff advertises both regionally and nationally in magazines, and representatives of plaintiff attend trade and boat shows held throughout the country. In addition, plaintiff maintains a website under the name "sterlingacceptance.com", a domain name which was registered on February 4, 1998. Plaintiff also owns the domain names "sterlingboatloan.com", "sterlingboatloan.net", and "sterlingboatloans.net". Each of these domain names links to the plaintiff's primary website "sterlingacceptance.com." These secondary domain names were registered on July 26, 1999, July 28, 1999, and July 28, 1999, respectively.

Defendant Tommark, Inc. is a Massachusetts corporation with its principal place of business in Whitinsville, Massachusetts. In 1991, defendant was founded by Tom Smith and Mark Moriarty and was incorporated in Sterling, Massachusetts. The name "Tommark" is derived by combining the co-founders' first names. Like plaintiff, defendant is in the business of providing marine lending services as well as loans to private individuals for the purchase of manufactured housing.

Defendant does business under the name "STERLING ASSOCIATES", and ordinarily uses this name in combination with an anchor logo. Defendant has two offices, one in Whitinsville, Massachusetts and the other in Fort Lauderdale, Florida. Defendant provides marine financing services both regionally and nationally, and arranges for boat and housing loans in all forty-eight contiguous states. Since 1993, defendant has arranged for the financing of loans totaling approximately $465 million in volume.

Defendant advertises both regionally and nationally in magazines and markets its services at trade and boat shows held throughout the country. Defendant maintains a website under the domain name "sterlingboatloans.com." The domain name was registered on September 17, 1998. Defendant also owns the domain name "boatbanker.net", which links to defendant's primary website.

On July 5, 2001, plaintiff's counsel sent a letter to defendant advising it of the rights claimed by plaintiff in its registered mark and demanding that defendant immediately cease using its confusingly similar name and mark. On August 15, 2001, counsel for defendant replied, stating that defendant's use of its name and mark did not infringe on plaintiff's mark.

On October 2, 2001, plaintiff filed a three count complaint in this Court naming Sterling Associates, Inc. as the sole defendant. After defendant had filed a motion to dismiss asserting that plaintiff had sued the wrong defendant, an amended complaint was filed by plaintiff naming Tommark, Inc. as the sole defendant.[1]

Plaintiff's amended complaint contains three counts. Count I alleges that defendant has infringed on plaintiff's federally registered trademark in violation of 15 U.S.C. § 1114. Count II alleges that defendant's use of its name and marks constitutes a false designation of origin as to the marine lending services offered by defendant in violation of § 1125(a). Count III alleges that defendant's use of its name

---

1. On December 20, 2001, this Court granted plaintiff's motion for leave to amend the complaint and denied defendant's motion to dismiss as moot. The amended complaint was deemed to have been filed on December 20, 2001.

and mark constitutes common law infringement and unfair competition. As relief, plaintiff seeks damages, a permanent injunction, an accounting, attorneys' fees and costs.

## II

### Summary Judgment Principles

A defendant moving for summary judgment bears the burden of showing the absence of any genuine issue of material fact and that it is entitled to judgment as a matter of law. *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir.1984). Where, as here, the nonmoving party will bear the ultimate burden of persuasion at trial, "the burden on the moving party [at the summary judgment stage] may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

One of the purposes of Rule 56 of the Federal Rules of Civil Procedure is to require a plaintiff, in advance of trial and after a motion for summary judgment has been filed and properly supported, to come forward with some minimal facts to show that the defendant may be liable under the claims alleged. *See* F.R.Civ.P. 56(e). If the nonmoving party "fail[s] to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then "the plain language of Rule 56(c) mandates the entry of summary judgment." *Catrett*, 477 U.S. at 322, 323, 106 S.Ct. 2548.

While the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the party opposing the motion, *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985), "when the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). " 'A mere scintilla of evidence is not enough to create a fact issue; there must be evidence on which a jury might rely.' " *Barwick*, 736 F.2d at 958–59 (quoting *Seago v. North Carolina Theatres, Inc.*, 42 F.R.D. 627, 640 (E.D.N.C. 1966), *aff'd*, 388 F.2d 987 (4th Cir.1967), *cert. denied*, 390 U.S. 959, 88 S.Ct. 1039, 19 L.Ed.2d 1153 (1968)). Moreover, only disputed issues of *material* fact, determined by reference to the applicable substantive law, will preclude the entry of summary judgment. "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In the absence of the necessary minimal showing by the plaintiff that the defendant may be liable under the claims alleged, the defendant should not be required to undergo the considerable expense of preparing for and participating in a trial. *See Catrett*, 477 U.S. at 323–24, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 256–57, 106 S.Ct. 2505. Indeed, the Fourth Circuit has stated that, with regard to motions for summary judgment, the district courts have "an affirmative obligation ... to prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987) (quoting *Catrett*, 477 U.S. at 323–24, 106 S.Ct. 2548).

Applying these principles to the facts of record here, this Court has concluded that defendant's motion for summary judgment must be granted as to all three counts of the complaint. Since the facts of record here "taken as a whole could not lead a

rational trier of fact to find for the [plaintiff], there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.

Rule 56(e) governs the requirements for affidavits filed in support of a motion for summary judgment. Rule 56(e) states:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.

When an affidavit does not meet these standards, it is subject to a motion to strike. *Metropolitan Life Ins. Co. v. Hall*, 9 F.Supp.2d 560, 561, n. 2 (D.Md.1998). The Fourth Circuit has stated that "summary judgment affidavits cannot be conclusory or based on hearsay." *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir.1996).

### III

#### *Defendant's Motion to Strike*

In support of its motion for partial summary judgment, plaintiff has submitted affidavits and supplemental affidavits of Dave Trostle, Karen Trostle, and George Petrarca, and affidavits of Richard Royer and Robert Durity.[2] Several of these affidavits were submitted by plaintiff with its opposition to defendant's motion and with its reply memorandum.[3] Ms. Trostle is co-founder and President of plaintiff, and Mr. Trostle is Vice President of plaintiff. Pet-

**2.** The affidavit of Jun Y. Lee, Esq., one of plaintiff's attorneys, has been withdrawn.

**3.** At the hearing held on the pending motions, the Court granted defendant's motion to strike the supplemental affidavit of George

rarca is a Vice President of Citizens Bank of Rhode Island in charge of specialized lending, while Royer is the owner of *Chesapeake Bay* magazine and *Off Shore* magazine. Durity is employed by Trader Publishing Company which publishes *Yacht Trader* magazine.

In its motion to strike, defendant has challenged various paragraphs of the affidavits of the Trostles and Petrarca, claiming that certain statements contained therein are not based on personal knowledge of the affiants, that the affiants are not competent to provide testimony relating to certain matters which they have discussed, and that some of the affiants' statements constitute inadmissible hearsay.

■ The Court has now reviewed each of the affidavits and supplemental affidavits challenged by defendant. Many of defendant's arguments are without merit. However, several portions of the affidavits in question will be stricken on the ground that they do not comply with Rule 56(e).

In Paragraph 21 of her supplemental affidavit, Ms. Trostle states that it is her "understanding" that defendant works with Citizens Bank. Paragraph 21 will be stricken because the words "my understanding" indicate a lack of personal knowledge. *See Francis v. Board of Sch. Commissioners*, 32 F.Supp.2d 316, 323 (D.Md.1999). Paragraph 22 of Ms. Trostle's supplemental affidavit relates to misdirected wire transfers made by Citizens Bank. The second sentence of this paragraph constitutes inadmissible hearsay and will be stricken.

Petrarca and the second supplemental affidavit of Karen Trostle which were filed on September 13, 2002, a date after the pending motions had been fully briefed.

Paragraph 13 of the supplemental affidavit of Mr. Trostle alleges that on more than one occasion plaintiff received misdirected loan applications. Paragraph 14 describes one such instance and refers to an attached document. Because plaintiff did not attach any other documents disclosing misdirected loan applications as required by Rule 56(e), the Court will strike the words "on more than one occasion" from the first sentence of said Paragraph 13. Paragraph 19 of Mr. Trostle's supplemental affidavit deals with an advertising error made by *Motor Boating* magazine. It is stated that a representative of the magazine explained that the error in question was due to confusion of the names of the two companies. The statement in question constitutes inadmissible hearsay, inasmuch as there is no evidence, as argued by the plaintiff, that the statement of the magazine representative was against his interest at the time that it was made. The Court will therefore strike all but the first two sentences of Paragraph 19 of Mr. Trostle's supplemental affidavit. Paragraph 22 of Mr. Trostle's supplemental affidavit mentions an over billing of plaintiff for an advertisement placed in *Yacht Trader* magazine. It is stated that a representative of the magazine explained that plaintiff was charged for his own advertisement as well as for defendant's advertisement. The statement of the magazine representative is inadmissible hearsay, and the Court will therefore strike the last two sentences of Paragraph 22.

Defendant has not met its burden of establishing that any of the other challenged statements in the affidavits do not comply with the requirements of Rule 56(e). None of these other challenged statements will therefore be stricken.

For the reasons stated, defendant's motion to strike affidavits will be granted in part and denied in part.

## IV

### *The Pending Motions for Summary Judgment*

Both plaintiff's motion for partial summary judgment and defendant's motion for summary judgment present issues arising under trademark law. The question which the Court will first address is whether there are any genuine issues of material fact which would preclude the entry of summary judgment in favor defendant as to both liability and damages. If defendant is as a matter of law entitled to the entry of summary judgment in its favor, then obviously plaintiff's motion for partial summary judgment must be denied.

■■■ To prevail on a claim for trademark infringement and unfair competition under Sections 32(1) and 43(a) of the Lanham Act, a "complainant must demonstrate that it has a valid, protectible trademark and that the defendant's use of a colorable imitation of the trademark is likely to cause confusion among consumers." *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.,* 43 F.3d 922, 930 (4th Cir.1995). The test for trademark infringement and unfair competition under state law is the same as the test under the Lanham Act. *Resorts of Pinehurst, Inc. v. Pinehurst Nat'l Corp.,* 148 F.3d 417, 422 (4th Cir.1998) (holding that likelihood of confusion is the basic test for both common law and federal trademark infringement); *Microsoft Corp. v. Grey Computer,* 910 F.Supp. 1077, 1088 (D.Md.1995) (holding that the Lanham Act's likelihood of confusion test is the test for unfair competition under Maryland common law).

In this case, it is not disputed that plaintiff has a valid protectible trademark. Since August 1, 1995, plaintiff has owned a valid registered trademark for a mark con-

sisting of a pyramidal shaped design with a dollar sign therein and the separate words "STERLING," "ACCEPTANCE," and "CORPORATION" placed thereunder. Plaintiff's registered mark is now "incontestable." Incontestability is "conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce." 15 U.S.C. § 1115(b). However, incontestability alone does not establish a likelihood of confusion. *Lone Star,* 43 F.3d at 933.

■ The essential dispute in this case concerns whether a likelihood of confusion exists. A likelihood of confusion exists when the defendant's use of a colorable imitation of the registered mark is likely to cause confusion. *Lone Star,* 43 F.3d at 930. Although the determination whether a likelihood of confusion exists is an inherently factual issue dependent on the specific facts and circumstances in each case, *see Lone Star,* 43 F.3d at 933 and *Petro Stopping Ctrs., L.P. v. James River Petroleum, Inc.,* 130 F.3d 88, 92 (4th Cir.1997), summary judgment may in an appropriate case be entered on the likelihood of confusion issue. *Lone Star* 43 F.3d at 935.

■ A district court in the Fourth Circuit must consider the following seven factors in determining whether a likelihood of confusion exists in a particular case: (1) the strength or distinctiveness of the senior mark; (2) the similarity of the two marks; (3) the similarity of the goods and services that the marks identify; (4) the similarity of the facilities that the two parties use in their businesses; (5) the similarity of the advertising the two parties use; (6) the defendant's intent; and (7) actual confusion. *Id.* at 933; *Pizzeria Uno Corp. v. Temple,* 747 F.2d 1522, 1527 (4th Cir.1984). Not all of these factors are of equal relevance in every case. *Id.*

### (a)
### *Liability*

■ Following a careful review of the voluminous evidentiary materials submitted by the parties, this Court has concluded that defendant is entitled in this case to the entry of summary judgment in its favor. The Court is satisfied that a reasonable jury could not on the record here find that there exists a likelihood of confusion between plaintiff's registered trademark and defendant's mark.

The Court's determination of the ultimate issues in this trademark case must be based on its evaluation of the seven factors listed in the Fourth Circuit's *Lone Star* decision. Several of those factors may indeed be resolved in favor of the plaintiff, namely Nos. 3, 4 and 5. However, insofar as the other four factors are concerned, defendant has pointed to conclusive evidence in the record which supports its contention that they should be determined in defendant's favor.

### (i)
### *Strength or Distinctiveness of the Mark*

■ In determining the strength or distinctiveness of a trademark, the Court must weigh two separate aspects: (1) conceptual strength, namely the placement of the mark at issue on the spectrum of marks; and (2) commercial strength, the marketplace recognition of the mark. *World Gym Licensing Ltd. v. Fitness World, Inc.,* 47 F.Supp.2d 614, 621–22 (D.Md.1999). Conceptual strength is determined by placing the mark on the spectrum of generic, descriptive, suggestive and arbitrary. The word "Sterling", which is commonly used in the term "Pound Sterling", ordinarily refers to money. When the word is used in connection with services provided by a business in the financial field, it suggests a mental image

or commercial impression of money or finances.

The facts here support the conclusion that plaintiff's mark is suggestive. Plaintiff's mark suggests rather than describes some characteristic of the services to which it is applied and requires the consumer to exercise his imagination to reach a conclusion as to the nature of those services. *Lone Star*, 43 F.3d at 934; *Pizzeria Uno*, 747 F.2d at 1528. The placement of a mark in the suggestive category, however, is merely the first step in a court's assessment of the strength of the mark for purposes of applying the likelihood of confusion test. *Petro*, 130 F.3d at 93. A mark held to be suggestive may be found under the particular circumstances of a case to be weak under the first likelihood of confusion factor. *Id.*

On the record here, this Court concludes that plaintiff's mark lacks commercial strength. Evidence of record indicates that the word "Sterling" is used by a large number of businesses which provide financial services, including many that arrange for boat loans. Moreover, evidence disclosed by the Patent and Trademark Office's online database show eighteen registrations in the financial services class which include the word "Sterling" and over three hundred and fifty registrations in other classes which include the word "Sterling". In *Petro*, the Fourth Circuit held that evidence of numerous third-party federal registrations of or applications for the word "Petro" supported the district court's conclusion that Petro was a weak mark. *Petro*, 130 F.3d at 93, 94. In *Bridges in Organizations, Inc. v. Bureau of National Affairs, Inc.*, 1991 WL 220807

*8 (D.Md.1991), Judge Black of this Court held that although plaintiff's mark "Bridges in Healthcare" may have been suggestive, it was not strong because the word "Bridges" was commonly used in the relevant field.[4] Significant evidence in the record here of third-party use of the word "Sterling" in the financial services industry and in other trademark registrations leads to the conclusion that plaintiff's mark is weak and does not acquire significant secondary meaning. *See Petro*, 130 F.3d at 93; *Pizzeria Uno*, 747 F.2d at 1530–31.

For these reasons, this Court concludes that the first factor of the *Lone Star* test favors the defendant.

(ii)

*Similarity of the Marks*

In deciding whether the two marks at issue are similar, each one must be examined in its entirety. Plaintiff's registered mark is a combination of a design consisting of a triangle with horizontal lines and a dollar symbol therein, together with the words "STERLING," "ACCEPTANCE," and "CORPORATION" placed underneath the design on separate lines. Defendant's unregistered mark ordinarily includes the word "Sterling" with an anchor logo underneath and the word "Associates" placed under the anchor. As stated by Auzville Jackson, Esq.[5] in his report, the different wording and designs used by plaintiff and by defendant in combination with the word "Sterling" are sufficient to create clearly different audible, visual and commercial impressions. When each is viewed in its entirety, this Court would agree that the two marks are quite different.

Of considerable significance in this case is the fact that plaintiff and defendant

---

4. Although Judge Black granted plaintiff's motion for a preliminary injunction in *Bridges*, he found from the evidence that plaintiff's likelihood of success in proving trademark infringement was minimal. *Id.* at *14.

5. Mr. Jackson is a patent and trademark attorney who has testified as an expert witness in many patent and trademark cases.

have concurrently used their marks for a period of almost ten years. Defendant began using the term "STERLING ASSOCIATES" in 1991, and it was not until 2001 that plaintiff complained of possible confusion. Representatives of both plaintiff and defendant have attended the same trade and boat shows and have interacted at various other conventions and industry events over a period of many years. Both plaintiff and defendant maintained separate booths at trade shows. Included among the exhibits submitted by plaintiff are color photographs of the booths maintained by plaintiff and defendant at a trade show, each booth topped by a banner displaying the parties' respective marks. Plaintiff's banner displays the Sterling Acceptance Corporation trademark with its pyramid, dollar sign and separate words, and defendant's banner shows the Sterling Associates name with an anchor logo located between the word "Sterling" and the word "Associates." Prospective customers viewing these displays would be readily able to distinguish between the two marks. Had customers believed that the two marks were confusingly similar, there would certainly have been more evidence of actual confusion than that presented by plaintiff in this case. Defendant's concurrent use of its corporate name for nearly ten years at the same time that plaintiff was using its mark without a complaint from plaintiff gave defendant good cause to believe that it was entitled to continue to use its mark because it was dissimilar. See World Gym, 47 F.Supp.2d at 623.

For these reasons, the Court concludes that the second factor of the Lone Star test also favors defendant.

### (iii)

### Similarity of Services, Facilities and Advertising

Defendant concedes that the third, fourth and fifth factors of the Lone Star test favor the plaintiff. Both plaintiff and defendant provide marine financing services to their customers. The facilities of both parties include offices, and they both maintain a website and use exhibit booths at trade shows. Both plaintiff and defendant advertise at trade shows, in trade publications and by way of the internet.

These factors do little more than indicate that plaintiff and defendant have for many years been competitors in providing marine financing services to prospective boat owners. They have been competitors for a period of some ten years between 1991 and 2001. In the latter year, plaintiff finally objected to defendant's use of its "Sterling Associates" mark, even though it undoubtedly had known from the interaction of the parties' representatives at trade shows and elsewhere that defendant had also been using the word "Sterling" for many years in promoting its business.

Under the circumstances, the third, fourth and fifth factors, although favoring plaintiff, are not in this case entitled to as much weight as the first, second, sixth and seventh factors in the Court's determination of the issue whether defendant's use of its mark was likely to cause confusion among consumers. As the Fourth Circuit noted in Pizzeria Uno, not all of the Lone Star factors are of equal relevance in every case. 747 F.2d at 1527.

### (iv)

### Defendant's Intent

Evidence of bad faith is a strong indication that a likelihood of confusion exists. Pizzeria Uno, 747 F.2d at 1535. In that case, the Court explained:

> If there is intent to confuse the buying public, this is strong evidence establishing likelihood of confusion, since one intending to profit from another's reputa-

tion generally attempts to make his signs, advertisements, etc. to resemble the other's so as deliberately to induce confusion. *Id.*

There is no evidence in this record that defendant acted with bad faith. The name "Sterling Associates" was chosen based on the geographic location where defendant's business was originally founded, namely Sterling, Massachusetts. As indicated by the testimony of its co-founder Tom Smith, defendant was not even aware of the existence of plaintiff's business when it chose the term "Sterling Associates" as a part of its corporate name. Evidence does not exist in this case that defendant chose its corporate name in order to deliberately induce confusion with plaintiff's mark and to thereby profit from plaintiff's reputation. At no time prior to 2001 during the ten year coexistence of the two parties in the same marine financing field did plaintiff ever accuse defendant of intentionally using a name similar to the mark under which plaintiff did business.

There is no merit to plaintiff's contention that defendant's bad faith may be inferred from circumstantial evidence. That defendant continued to use the mark "Sterling Associates" after plaintiff registered its trademark in 1995 is hardly evidence of an intention on the part of defendant to profit by doing business under plaintiff's mark. Defendant had every right to assume under the circumstances here that consumers would not likely be confused because there were observable differences in the two marks.

For these reasons, this Court concludes that defendant acted in good faith in choosing to do business under the name "Sterling Associates" when it commenced its operations in 1991. Nor did defendant act in bad faith when it continued to use that name after plaintiff registered its

trademark in 1995. The sixth factor therefore favors defendant.

(v)

*Evidence of Actual Confusion*

In arguing that there is substantial evidence in the record here of actual confusion, plaintiff relies primarily on instances in which banks, trade magazines and internet service providers may have confused defendant's mark with that of plaintiff. But evidence of this sort is entitled to little weight. As the Fourth Circuit held in *Lone Star,* a plaintiff suing under the Lanham Act for trademark infringement and unfair competition must prove, *inter alia,* that "the defendant's use of a colorable imitation of the trademark is likely to cause confusion among *consumers.*" (Emphasis added). 43 F.3d at 930. Relevant confusion is that which affects the purchasing and selling of the goods or services in question. *Lang v. Retirement Living Pub. Co., Inc.,* 949 F.2d 576, 583 (2d Cir.1991), (citing *Programmed Tax Systems, Inc. v. Raytheon Co.,* 439 F.Supp. 1128, 1132 (S.D.N.Y.1977)). Trademark infringement protects only against mistaken purchasing decisions and not against confusion generally. *Lang,* 949 F.2d at 583 (citing *Restatement Third of Unfair Competition,* § 20, reporter's note at 179).

Any lost profits or injury to its reputation suffered by plaintiff would necessarily have resulted because prospective customers became confused by the similarity of the two marks and did business with defendant rather than with plaintiff. Quite obviously, banks, trade magazines and internet service providers are not consumers of the services provided by plaintiff and defendant to prospective purchasers of boats. Evidence of this sort relating to possible confusion by an entity which is not "a potential customer of the parties" is entitled to little weight. *Bridges,* 1991 WL 220807 at *12. There is no merit to plain-

tiff's contention that banks should be considered consumers of plaintiff's services because banks receive a commission or fee for the loans made by them. A bank does not even participate in a particular transaction until an actual consumer has agreed to do business with either plaintiff or defendant. Any actual confusion on the part of a consumer would already have occurred before a bank entered the picture.

Plaintiff has here presented only meager evidence of actual confusion by consumers. The record in this case does not contain any affidavits or deposition excerpts of individuals who sought boat loans and who, because of the similarity of the parties' marks, confused the services offered by plaintiff with those of defendant. Plaintiff has submitted only a few documents indicating that an applicant for a loan confused plaintiff's and defendant's businesses. In his supplemental affidavit, Mr. Trostle states that he is aware of "numerous instances" wherein plaintiff received written communications from third parties addressed or pertaining to "Sterling Associates" and that these third parties included prospective applicants for loans. This conclusory statement is entitled to no weight, since Mr. Trostle admits that plaintiff's records do not include copies of any such written communications. Pursuant to Rule 56(e), a statement of this sort may not be credited unless certified copies of papers referred to in the affidavit are attached. Moreover, no where does Mr. Trostle say how many prospective loan applicants are included in the instances mentioned by him.

In *Petro,* the Fourth Circuit held that evidence of only a few instances of actual confusion were *de minimis* and worthy of little weight. 130 F.3d at 95. Where, as here, each of the parties engaged in a large volume of commerce over a lengthy period of time[6] and where plaintiff can point to only some 10 instances where the marks may have been confused by non-consumers, such meager evidence of actual confusion is at best *de minimis.* *Id.* As this Court noted in *Pennzoil Co. v. Crown Central Petroleum Corp.,* 50 F.Supp. 891, 900 (D.Md.1943), occasional instances of confusion or thoughtless errors by inattentive purchasers are of little significance. *See also Nutri/System, Inc. v. Con–Stan Industries, Inc.,* 809 F.2d 601, 606–07 (9th Cir.1987).

To prevail in a trademark case of this sort, a plaintiff must show that "an appreciable number of reasonable consumers" would be confused as to the source of the services offered by the parties by reason of their respective marks. *Inc. Publishing Corp. v. Manhattan Magazine, Inc.,* 616 F.Supp. 370, 386 (S.D.N.Y.1985), *aff'd.* 788 F.2d 3 (2d Cir.1986). Plaintiff has not in this case presented proof that an appreciable number of persons seeking boat loans were likely confused by the two marks at issue. As the Court noted in *King of the Mountain Sports, Inc. v. Chrysler Corp.,* 185 F.3d 1084, 1092 (10th Cir.1999), a handful of anecdotal evidence is *de minimis* and does not support a finding of a genuine issue of material fact as to the likelihood of confusion.

For these reasons, this Court concludes that the seventh factor also favors the defendant.

### (vi)

### *Summary of Factors*

In applying in this case the seven *Lone Star* factors, this Court concludes that plaintiff has not shown that defendant's use of a colorable imitation of its trade-

---

**6.** Since 1996, plaintiff has arranged for some 850 loans totaling some $103 million. Since 1993, defendant has arranged for the financing of loans totaling some $465 million.

mark is likely to cause confusion among consumers. Four of the seven factors have been found to favor defendant. The three determined to be in plaintiff's favor will not, because of their nature, be given the weight to which the other four are entitled. The cumulative weight of all seven factors favors defendant.

The Court's discussion herein of plaintiff's right to a recovery under 15 U.S.C. § 1114 is likewise applicable to the claim of plaintiff asserted in this case under 15 U.S.C. § 1125(a).[7] In the absence of adequate proof of the likelihood of confusion, plaintiff is not entitled to prevail under either § 1114 or § 1125(a). Moreover, the test for common law trademark infringement and unfair competition under Maryland law is the same as that under the Lanham Act, namely proof of the likelihood of confusion. *Microsoft Corp.*, 910 F.Supp. at 1088.

Accordingly, this Court is satisfied that no reasonable jury could on the evidence in this record find for the plaintiff on the issue of liability presented by any one of the three Counts of the amended complaint. Defendant's motion for summary judgment will therefore be granted, and plaintiff's motion for partial summary judgment will be denied.

### (b)

### *Damages*

Even if, *arguendo*, plaintiff would be entitled to proceed to trial in this case on liability issues, summary judgment must in any event be entered in favor of defendant. In seeking summary judgment under Rule 56, defendant asserts that plaintiff has produced no evidence indicating that it suffered damages as a result of plaintiff's infringement, and furthermore that there is no evidence of record supporting plaintiff's claim that it is entitled to an accounting and injunctive relief. This Court would agree.

■ Under the Lanham Act, a plaintiff, when a violation has been established, "shall be entitled...subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). In order to recover actual damages, a plaintiff must prove that it has in fact been damaged and must also establish a reasonable basis for calculating its damages. *Seidelmann Yachts, Inc. v. Pace Yacht Corp.*, 1989 WL 214497 at *19 (D.Md.1989). Absent proof of actual damages, no award based on this aspect of the recovery sought by a plaintiff can be made. *Id.*

■ The unavailability of actual damages as a remedy does not preclude a plaintiff from recovering an accounting of the defendant's profits. *A.C. Legg Packing Co., Inc. v. Olde Plantation Spice Co., Inc.*, 61 F.Supp.2d 426, 433 (D.Md.1999). However, in order to be entitled to an accounting and a recovery of defendant's profits, the plaintiff must prove that the defendant acted in bad faith. *Id.* In order to prove bad faith, the plaintiff must show that defendant acted with "wilful deception" or "with the deliberate intent to cause confusion, mistake or to deceive purchasers." *Motor City Bagels, L.L.C. v. American Bagel Co.*, 50 F.Supp.2d 460, 488 (D.Md.1999).

As noted by defendant, there is no evidence in this record of the amount of defendant's profits nor of the amount of other damages sustained by plaintiff because of the alleged infringement of its trademark. Plaintiff has not presented evidence that sales of its services were di-

---

**7.** Like § 1114, § 1125(a)(1) requires proof of the fact that use in commerce of the challenged mark is "likely to cause confusion...."

verted or that its goodwill and reputation were damaged by defendant's use of the term "Sterling Associates." When asked whether plaintiff had lost sales or had lost business with persons who contracted with defendant rather than with plaintiff, Karen Trostle, at her deposition, testified that she could not give any specifics. Although admitting that plaintiff's damages "may still not be fully quantified," plaintiff argues that it has "certainly suffered losses in sales due to confusion of magazine publishers" and that it has "suffered unnecessary expenses and certain injury to its business reputation as a direct result of such other instances of confusion as to the mis-transfers" of funds to defendant's bank rather than to plaintiff's bank. (Plaintiff's Memorandum in Opposition at 4–5).

Unsupported assertions of this sort do not satisfy the requirements of Rule 56(e). When a motion for summary judgment has been made and supported, the adverse party may not rest upon mere allegations or denials of the other party's motion but the adverse party's response by affidavits or other appropriate evidentiary materials "must set forth *specific facts* showing that there is a genuine issue for trial." *Id.* (Emphasis added). If the adverse party does not so respond, summary judgment will be entered against it. *Id.*

Here, plaintiff has not pointed to specific facts in the record showing that there is a genuine issue for trial as to its entitlement to a recovery of damages. No attempt has been made by plaintiff to quantify the damages allegedly sustained by it. There is no evidence in the record here that plaintiff lost sales or that its revenues declined because of customer confusion. Moreover, plaintiff is not entitled here to an accounting of defendant's profits in this case. As the Court has herein ruled, plaintiff has not shown that defendant act-

ed in bad faith. Since there is no evidence of willful deception on the part of the defendant or that it acted with deliberate intent to cause confusion, mistake or deception, plaintiff is not entitled to have this Court order an equitable accounting and award damages to plaintiff based on defendant's profits. *Motor City Bagels*, 50 F.Supp.2d at 488.

Under 15 U.S.C. § 1116, federal courts are empowered in a trademark case to grant injunctions "according to the principles of equity and upon such terms as the court may deem reasonable in order to prevent the violation of any right of the registrant" of a trademark. On the record here, the Court is satisfied that, even if plaintiff were to prevail at trial on the issue of liability, plaintiff would not be entitled in this case to injunctive relief. Principles of equity are to be applied by a court in deciding whether in a particular case a plaintiff is entitled to an injunction. § 1116. For several reasons, plaintiff has not shown that principles of equity require that this Court, if plaintiff were to prevail in this case, should enter a permanent injunction prohibiting defendant's use of the term "Sterling Associates."

As noted herein, plaintiff waited some ten years before asserting its trademark rights. Meanwhile, defendant, reasonably assuming that consumers would not be confused by the existence of the two marks, invested substantial sums in the promotion of its business. Were an injunction to be now entered after so many years, such relief would unfairly have a devastating effect on defendant's legitimate business interests.

Defendant has in this case relied on the so-called "unclean hands" defense. *See Fox–Stanley Photo Prods., Inc. v. Otaguro*, 339 F.Supp. 1293, 1295 (D.Mass.1972). Whether intentional or not, plaintiff improperly used the statutory notice symbol

in a way which differed from its registered mark. For example, on the second page of plaintiff's revised loan application form, there appears the wording "Trust your boat financing to Sterling ® Acceptance Corporation" as well as the wording "the Original Sterling ®". On page 3 of this application, the words "Sterling ® Acceptance Corporation" appear along one line at the top of the page without the pyramidal design. Finally, on page 4, the words "Sterling ® Boat Loan Application" appear on one line at the top of the page with the pyramidal design on both sides of the wording.

Clearly, plaintiff has pervasively misused the statutory notice symbol ®. Plaintiff does not have trademark rights in the word "Sterling." Plaintiff argues that the "unclean hands" doctrine is inapplicable in this case because its misuse of the statutory notice symbol was inadvertent. According to Mr. Trostle, in preparing his loan application forms, he relied on advice received from an examining attorney of the Patent and Trademark Office. Although facts relating to plaintiff's misuse of the statutory notice symbol may not be sufficient to permit defendant to prevail as to liability on the basis of the "unclean hands" doctrine, what occurred here is sufficient for this Court in its application of equitable principles to conclude that, even if liability of defendant were established, plaintiff would not be entitled to a permanent injunction. In *Fox–Stanley*, the Court denied a request for a preliminary injunction where the plaintiff had used the statutory notice with the mark "Fox Photo", a mark for which plaintiff did not own a registered trademark. 339 F.Supp. at 1295. Although the plaintiff in that case owned numerous registered "Fox" trademarks, it did not own any registered trademarks containing the word "Photo." *Id.* at 1294. Similarly in this case, plaintiff does not own a registered trademark containing merely the word "Sterling." In *L.F. Gaubert & Co. v. The Institute of Electrical and Electronics Engineers, Inc.,* 563 F.Supp. 122, 128 (E.D.La.1983), the Court held that plaintiff's use of the statutory notice with a mark that had not yet been registered precluded injunctive relief. Significantly, the Court in that case held that the unclean hands defense applied whether or not plaintiff's misuse was intentional or careless. *Id.* Similarly in this case, principles of equity preclude plaintiff's right to injunctive relief if it were to prevail in this case. Indeed, plaintiff's misuse of the statutory notice symbol "Sterling ®," even if not intentional, would be more likely to cause confusion among the parties' customers and potential customers than would defendant's use of the term "Sterling Associates."

For these reasons, defendant is also entitled to the entry of summary judgment in its favor as to the issue of plaintiff's right at a trial to recover damages and its right to injunctive relief. This Court concludes as a matter of law that plaintiff has not produced evidence indicating that, were it to prevail as to liability, it would be entitled to an award of damages and to other equitable relief.

## V

### Conclusion

In sum, this case presents a dispute between two competitors who for many years have offered the same type of marine lending services to prospective purchasers of boats and other marine vessels. Both plaintiff and defendant have used the word "Sterling" in promoting their businesses. Although plaintiff was able in 1995 to register a trademark which included the word "Sterling," plaintiff has not in this case presented proof which entitle it at trial to a judgment against defendant

under the Lanham Act or Maryland law for infringement and unfair competition.

On the record here, this Court has concluded as a matter of law that defendant's use of its mark is not likely to cause confusion among the consumers of the parties' services. Moreover, plaintiff has suffered no injury or losses because of wrongful conduct on the part of defendant.

For all the reasons stated herein, defendant's motion to strike will be granted in part and denied in part, and defendant's motion for summary judgment will be granted. Plaintiff's motion for partial summary judgment will be denied. An appropriate Order will be entered by the Court.